**UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION**

|  |  |
|---|---|
| In re:<br><br>ROBERT A LOMBARDI<br><br>Debtor | Chapter 7<br>Case No. 16-13360-MSH |

**MEMORANDUM OF DECISION ON THE TRUSTEE'S OBJECTION TO THE DEBTOR'S CLAIM OF EXEMPTION**

Harold B. Murphy, the chapter 7 trustee in this case, filed an objection to certain exemptions claimed by the debtor, Robert A. Lombardi, in the proceeds of an annuity contract issued by Executive Life Insurance Company. Mr. Lombardi claimed the annuity as exempt on schedule C of the schedules of assets and liabilities accompanying his bankruptcy petition based on the following provisions of the Massachusetts General Laws: Mass. Gen. Laws ch. 235, § 34(17); Mass. Gen. Laws ch. 175, § 110A; Mass. Gen. Laws ch. 175, § 119A; and Mass. Gen. Laws ch. 175, § 132C.[1]

Mr. Lombardi's annuity arose as a result of a medical malpractice suit that he brought many years ago. On December 31, 1982, as part of the settlement of that suit, the defendant purchased the annuity for Mr. Lombardi's benefit. While Mr. Lombardi has been unable to produce a complete copy of his annuity contract, he and Mr. Murphy have stipulated to the introduction into evidence in this matter of a five page excerpt from a document issued by Executive Life, which on its first page states: "Group Single Premium Immediate Annuity with

---

[1] Mr. Lombardi also claimed his annuity was exempt under Mass. Gen. Laws ch. 175, § 36B but subsequently waived his claim of exemption under that provision.

Payments Certain. Nonparticipating. This is a certificate issued pursuant to the Master Group Insurance Contract."

As the parties have stipulated and as set forth on the annuity certificate, since May 20, 1986, Mr. Lombardi has received (and will continue to receive for life) $325 each month. In addition, he has received lump sum payments, totaling $140,000, distributed at various intervals during the twenty-year period between January 20, 1988 and January 20, 2018. Prior to filing his bankruptcy petition commencing this case on August 31, 2016, in addition to his regular monthly payments, Mr. Lombardi had received all but the final lump sum payment under the annuity. The final payment of $35,000 was paid to Mr. Lombardi on January 20, 2018.[2]

Mr. Lombardi seeks to exempt all post-petition payments under the annuity, namely all $325 monthly payments as well as the $35,000 lump sum payment, based on the state exemption statutes listed above. Mr. Murphy objects to the claimed exemption under each statute except Mass. Gen. Laws ch. 235, §34(17), the so-called "Massachusetts wildcard exemption statute," which provides an exemption for "[t]he debtor's aggregate interest in any personal property, not to exceed $1,000 in value, plus up to $5,000 of any unused dollar amount of the aggregate exemptions provided under clauses Second, Fifth and Sixteenth." The parties agree that Mr. Lombardi's state wildcard exemption on the date of his bankruptcy filing was worth $5,720.40 and that Mr. Lombardi may retain all post-petition payments received by him up to that amount.

Based on the parties' pre-trial submissions, none of the material facts relevant to this matter, including those set forth above, is in dispute, except for one: whether the annuity contract contained an anti-alienation provision within the meaning of Mass. Gen. Laws ch. 175, § 119A.

---

[2] By agreement of the parties this payment is being held in escrow pending a final ruling on Mr. Murphy's objection.

As indicated previously, the full annuity contract is unavailable. While the annuity certificate in evidence suggests the annuity is assignable, Mr. Lombardi requested a trial in order to introduce evidence as to the existence of an anti-alienation provision in the full annuity contract. I granted Mr. Lombardi's request over Mr. Murphy's objection and presided over a trial on November 15, 2017.

This memorandum constitutes my findings of fact (including all the facts previously recited) and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure. Jurisdiction over this contested matter is conferred by 28 U.S.C. § 1334 and § 157 and this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B), which I may determine by entry of a final order. Venue is appropriate pursuant to 28 U.S.C. § 1409.

As a matter of law, a trustee objecting to an exemption claim has the initial burden to overcome the universally acknowledged presumption that exemption claims should be upheld. *See In re LeClair*, 461 B.R. 86, 89 (Bankr. D. Mass. 2011). Though the burden of persuasion "always remains with the objecting party," once the objecting party produces evidence "to rebut the presumptively valid exemption . . . the burden of production then shifts to the debtor to come forward with unequivocal evidence to demonstrate that the exemption is proper." *Id.* (quoting *Carter v. Anderson (In re Carter)*, 183 F.3d 1027, 1029 n. 3 (9th Cir. 1999)). Mr. Murphy has carried his initial burden to overcome the presumption that Mr. Lombardi's exemption claims are valid. He has done so through a combination of analyzing the annuity certificate in evidence and parsing the state statutes relied upon by Mr. Lombardi. The burden has shifted to Mr. Lombardi to demonstrate that his exemption claims are valid.

Aside from the asserted wildcard exemption under Mass. Gen. Laws ch. 235, § 34(17), which Mr. Murphy does not quarrel with, all the other statutory exemption claims asserted by

3

Mr. Lombardi arise under Mass. Gen. Laws ch. 175. Relying on *Wilkinson v. Citation Ins. Co.*, 856 N.E.2d 829, 838 (Mass. 2006) for the proposition that Mass. Gen. Laws ch. 175 is "the comprehensive statutory and regulatory framework under which the insurance industry operates," Mr. Murphy argues that chapter 175 is altogether unavailable to Mr. Lombardi because his annuity is simply not insurance and chapter 175 applies to insurance only. But even if Mr. Murphy is correct that an annuity is not insurance, an issue I will address shortly, chapter 175 cannot be read as restrictively as Mr. Murphy proposes. That chapter also contains provisions related to other matters that do not fall under the statutory definition of insurance. For example, § 178 governs the compensation and accounts of receivers of insolvent companies. Mr. Murphy cannot, therefore, carry the day as to his objections in one fell swoop. Rather, it is necessary to examine, one at a time, each section of chapter 175 relied upon by Mr. Lombardi.

*Mass. Gen. Laws ch. 175, § 110A*

> Section 110A provides:
>
> So much of any benefit under a policy of *insurance insuring against disability from injury or disease* as does not exceed four hundred dollars for each week during any period of disability covered thereby shall not be liable to attachment, trustee process, or other process, or to be seized, taken, appropriated or applied by any legal or equitable process or by operation of law, either before or after payment of such benefit, to pay any debt or liabilities of the person insured under such policy, but this exemption shall not apply where an action or suit is brought to recover for necessaries contracted for during said period and the writ of bill or complaint contains a statement to that effect (emphasis added).

Section 110A "relat[es] to partial exemption of disability insurance from legal or equitable process." *Rosenthal v. Maletz*, 78 N.E.2d 652, 654 (Mass. 1948). Thus, it is with respect to § 110A that the question of whether Mr. Lombardi's annuity is a policy of insurance must be answered.

4

Section 2 of chapter 175 defines an insurance contract as "an agreement by which one party for a consideration promises to pay money or its equivalent, or to do an act valuable to the insured, upon the destruction, loss or injury of something in which the other party has an interest." Mass. Gen. Laws ch. 175, § 2. It is undisputed that Mr. Lombardi's annuity was purchased in settlement of his malpractice claim. Given that the annuity was the result of a settlement made *after* Mr. Lombardi was already injured, it is not a promise to pay "upon the destruction, loss or injury" to Mr. Lombardi and thus does not fit within the statute's definition.

Indeed, the Supreme Judicial Court of Massachusetts (the "SJC") has ruled that the definition of insurance under Massachusetts law does not include annuity contracts. *See Gregg v. Commissioner of Corporations and Taxation*, 54 N.E.2d 169, 173 (Mass. 1944). The SJC explained:

> [I]t does not follow that all contracts issued by a life insurance company in the ordinary course of business are contracts of life insurance for they are authorized to issue contracts of annuity. Insurance is defined by G.L.(Ter.Ed.) c. 175, § 2, which provides that a contract of insurance is an agreement by which one party for a consideration promises to pay money or its equivalent, or to do an act valuable to the insured, upon the destruction, loss or injury of something in which the other party has an interest. This definition first appeared in St.1887, c. 214, § 3, and adopted the common law definition of insurance . . . That definition does not include annuity contracts . . . Neither do we think it includes an annuity contract providing for the payment of a death benefit measured by approximately the difference between the amounts paid in by the annuitant and the total annuities paid by the company to him. The distinction between an annuity contract and a life policy has been frequently pointed out.

*Gregg v. Commissioner of Corporations and Taxation*, 54 N.E.2d at 172-73.[3]

---

[3] *Gregg* was decided under the Tercentenary Edition of the General Laws of Massachusetts, but the definition of an insurance contract in effect at that time is identical to the one found in § 2 of Mass. Gen. Laws ch. 175 today.

5

Given that Mr. Lombardi's annuity contract does not constitute a contract of insurance under Mass Gen. Laws ch. 175, § 2, Mr. Lombardi has not satisfied his burden of establishing that his claim of exemption in his annuity is valid under § 110A.

*Mass. Gen. Laws ch. 175, § 119A*

Section 119A provides:

> If, under the terms of any annuity contract or policy of life insurance, or under any written agreement supplemental thereto, issued by any life company, the proceeds are retained by such company at maturity or otherwise, no person entitled to any part of such proceeds, or any instalment [sic] of interest due or to become due thereon, shall be permitted to commute, anticipate, encumber, alienate or assign the same, or any part thereof, *if such permission is expressly withheld by the terms of such contract, policy or supplemental agreement*; and if such contract, policy or supplemental agreement so provides, no payments of interest or of principal shall be in any way subject to such person's debts, contracts or engagements, nor to any judicial processes to levy upon or attach the same for payment thereof. No such company shall be required to segregate such funds but may hold them as part of its general corporate funds (emphasis added).

Section 119A provides that if, by the express terms of an annuity contract, the person entitled to the benefit of the contract is prohibited from encumbering or alienating the proceeds, then the annuity proceeds may not be subject to that person's "debts, contracts or engagements, nor subject to any judicial processes" for payment thereof. In other words, the proceeds are exempt. Section § 119A is "narrowly focused and protects a beneficiary's interest from his or her creditors only where the terms of the policy *expressly* prohibit the beneficiary from 'commut[ing], anticipat[ing], encumber[ing], alienat[ing] or assign[ing]' that interest in the policy." *In re Sloss*, 279 B.R. 6, 13 (Bankr. D. Mass. 2002) (emphasis in original).

As noted previously, the trial in this matter was for the purpose of allowing Mr. Lombardi the opportunity to prove that the annuity contract contained an anti-alienation provision consistent with Mass. Gen. Laws ch. 175, § 119A. Mr. Murphy, having satisfied his

6

burden of production by showing that the annuity certificate excerpt already in evidence contains no anti-alienation provision, the burden shifted to Mr. Lombardi to produce "unequivocal evidence" that the exemption claim under Mass. Gen. Laws ch. 175, § 119A was proper. *In re LeClair*, 461 B.R. at 89.

      At trial, Mr. Lombardi, who was the sole witness, testified that he remembered in detail a 1982 conversation with his now deceased attorney in the medical malpractice case, John Kimball, in which Mr. Kimball made it clear ("a million times") that Mr. Lombardi's annuity could never be sold, given away, or taken away by creditors. Putting aside whether this testimony is even admissible under some exception to the hearsay rule or under the parol evidence rule or the Massachusetts Dead Man's Statute, I find it is not probative of the issue to be decided at trial, namely whether the annuity contract contained an anti-alienation clause. Mr. Lombardi's testimony did not link Mr. Kimball's assurances to the annuity contract itself and thus is irrelevant to the determinative question of what the contract actually stated. Furthermore, from my observation of Mr. Lombardi's demeanor and in the context of his testimony overall, I find that his testimony on this point was self-serving and lacked credibility.

      Additionally, the annuity certificate that is in evidence states that "[t]he owner may be changed at any time" and that "[t]his Certificate may be assigned by the owner." These provisions contradict Mr. Lombardi's testimony in that they permit the annuity to be assigned. While it is possible that the general language in the annuity certificate might have been superseded by a more specific anti-alienation provision in the full contract, Mr. Lombardi's testimony did not establish that fact. Due to the lack of probity and credibility of Mr. Lombardi's

7

testimony and the fact that he has not produced any other evidence to establish the existence of an anti-alienation clause in the annuity contract, Mr. Lombardi has not succeeded in providing "unequivocal evidence" that his exemption claim under § 119A was proper.

*Mass. Gen. Laws ch. 175, § 132C*

Section 132C provides:

No group annuity contract, nor the proceeds or benefits thereof, shall be liable, either before or after payment, to be seized, taken, appropriated or applied by any legal or equitable process or operation of law to pay any debt or liabilities of the annuitant or his beneficiary or any other person having any right thereunder; nor shall the benefits or proceeds upon the death of an annuitant, when not made payable to a beneficiary, constitute a part of the estate of the annuitant for the payment of his debts.

By its terms, § 132C applies to "group annuity contract[s]." Section 132A of chapter 175 defines a group annuity contract as one "issued by a company" to: (a) "a person, firm, or corporation, as employer;" (b) "an employers' association;" (c) "a trade union or other association of wage workers;" or (d) "the trustee or trustees of a fund established by one or more employers, or by one or more trade unions or other associations of wage workers." Mass. Gen. Laws ch. 175, § 132A. Mr. Lombardi concedes that his annuity is not a group annuity as defined in § 132A but argues that a subsequent addition to the General Laws, c. 175, § 132A ½, expands the definition of group annuity contract to include his annuity.

Section 132A ½ provides:

A group annuity offered to a resident of the commonwealth under a group annuity contract issued to a group other than one described in section 132A shall be subject to the following requirements:
(a) A group annuity contract shall not be delivered in the commonwealth unless the commissioner finds that:
   (1) the issuance of the group annuity contract is not contrary to the best interests of the public;
   (2) the issuance of the group annuity contract would result in economies of acquisition or administration; and
   (3) the benefits are reasonable in relation to the premiums charged.

8

    (b) The premium for the annuity contract shall be paid either from the contract holder's funds or from funds contributed by the covered persons, or from both.

Mr. Lombardi suggests that his annuity qualifies as a group annuity because it was "offered to a resident of the commonwealth under a group annuity contract issued to a group other than one described in section 132A." But Mr. Lombardi's quotation from § 132A ½ is taken out of context. Read in its entirety § 132A ½ is clearly not definitional and does not expand or amend the definition of a group annuity set forth in § 132A. Rather it sets forth certain requirements for group annuities that are issued to a group other than those described in section 132A. "[W]hen the text of a statute is clear and unambiguous, it must be construed in accordance with its plain meaning." *Commonwealth v. Ray*, 755 N.E.2d 1259, 1261 (Mass. 2001).

It may very well be the case that Mr. Lombardi's annuity is governed by § 132A ½ and must meet the requirements contained in § 132A ½. As indicated previously the annuity certificate in evidence is titled "Group Single Premium Immediate Annuity" and the annuity was "issued to a group other than one described in section 132A." However, being subject to the requirements set forth by § 132A ½ does not mean that the annuity is a group annuity under § 132A. By its terms, § 132C exempts "group annuity contract[s]," which are defined in § 132A. Mr. Lombardi's annuity, though it may be governed by § 132A ½, does not fit under the definition of a group annuity set forth in § 132A. Thus, Mr. Lombardi has not satisfied his burden of establishing that his exemption in his annuity is proper under § 132C.

Having considered each of the statutory exemptions claimed by Mr. Lombardi as applicable to his annuity, I conclude that the only one available to him is the state wildcard exemption pursuant to Mass. Gen. Laws ch. 235, §34(17). This would entitle him to exempt up to $5,720.40 in proceeds from the annuity. His annuity does not qualify for exemption under any

9

of the provisions of Mass. Gen. Laws ch. 175 and thus Mr. Murphy's objection with respect to those exemption claims will be sustained. A separate order shall enter.

Dated at Boston, Massachusetts this 2nd day of February, 2018.

By the Court,

_____
Melvin S. Hoffman
U.S. Bankruptcy Judge

Counsel Appearing:   Jordan L. Shapiro, Esq.
Shapiro & Hender
Malden, Massachusetts
   for the debtor, Robert A. Lombardi

Kathleen R. Cruickshank, Esq.
Murphy & King, Professional Corporation
Boston, Massachusetts
   for the chapter 7 trustee, Harold B. Murphy